On January 29, 1940, defendant issued to Leonard Robert Hemmerling, hereinafter referred to as the insured, a funeral benefit certificate wherein it obligated itself, upon due proof of death of the insured, to furnish a funeral "in retail value" of $250. The insured lost his life on October 25, 1944, in the service of his country as parachute rigger, first class, when the chute carrier to which he was attached was torpedoed and sunk some twenty miles off the coast of Leyte Island. His body was not recovered. The certificate was then in full force and effect.
Plaintiff is the mother, sole heir and legal representative of the insured and has been so recognized by judgment of the District Court of Caddo Parish.
It was, of course, impossible for the defendant to furnish the funeral described *Page 635 
in the certificate and for which premium payments had been made for nearly five years. On demand it refused to pay the face amount of the certificate to plaintiff as the sole heir and legal representative of the insured. This suit was then instituted to recover judgment for said amount. The answer of defendant is virtually a general denial.
Judgment was rendered for plaintiff as prayed for by her.
The certificate involved herein, under "Conditions" contains this provision, which was intended to restrict the liability of defendant, to-wit: "Military and/or naval services are risks not covered by this policy."
In this court, defendant, through counsel, invokes and solely relies upon this clause to escape liability under the certificate. Answering this position, plaintiff contends that for reasons assigned by her counsel this clause is not applicable, but if originally tenable as a defense it has been waived by defendant's own action.
[1] Defendant's articles of incorporation were signed on August 14, 1936. It was capitalized at $10,000, represented by 1,000 shares, of which Mr. L.B. Kilpatrick subscribed for 986. He was the company's first president and as a witness in the case he testified that he then owned the company. Therefore, his attitude toward the certificate sued on and the position he has taken with respect to the company's liability thereon, are acts of the company and binding on it. To properly understand and appreciate the company's attitude and position with respect to its liability under the certificate, it is only necessary to quote Mr. Kilpatrick's testimony in the following instances, to-wit:
"Q. * * In our telephone conversation, Mr. Kilpatrick, do you recall if I did not ask that question, if you would require us to furnish the proof, that we were able to furnish any proof, and you said it was not necessary? A. Well, let's see now. Didn't I tell you that was a funeral service policy and under the law I would furnish the service? You would produce the body and we were ready to pay that — Two Hundred Fifty Dollars. Those are the words I told you.
"Q. But insofar as any formal written proof was concerned, it was not necessary. To produce the body and you would bury it? A. I believe it was something along that line.
"Q. Mr. Kilpatrick is it not true that in our telephone conversation that you pointed out that this policy contained a clause — I will refer you to the clause — the clause contains this; it is Number 4: 'Military and/or naval services are risks not covered by this policy.' Did you not refer me to that clause? A. That is correct. At any time a military man is killed and sent back we pay for the funeral service, just the same."
* * * * * *
"Q. In other words, you just simply rejected the claim and said your company was not liable? A. Well, Mr. Coen, this is a funeral service policy. If it had been a cash policy, without the military clause in there, there would have been no question. That was not the question.
"Q. But insofar as paying Mr. and Mrs. Bruce Two Hundred Fifty ($250.00) Dollars, you were certainly not going to do that? A. I don't see how I can. I do not think I can legally. No, I am not going to do it unless the Supreme Court holds me to it."
Defendant's counsel asked Mr. Kilpatrick the following question: "Mr. Kilpatrick, as I understand your testimony, it is that even though the policy did not cover it, if the body of this boy had been brought here, you would have furnished the service?" To which he answered: "Yes, just like I have done for seventy-five hundred."
[2] Our interpretation of the quoted testimony is that its meaning, although in some respects superficially contradictory, is as follows:
That it was not necessary to submit proof of death, same being in effect waived; that the rights of the company under the military and naval risk clause were waived or, at least, would not be invoked to escape liability; that the $250 *Page 636 
would be paid to plaintiff if the body of the insured was produced, as the company had done in 7,500 other cases wherein service men were involved. It is evident from this testimony that the company had adopted and followed a commendably liberal and generous policy as regards service men and their heirs or beneficiaries in 7,500 cases, and in keeping with this policy, had waived all rights accruing to it under the military and naval risk clause. It is also evident that the company intended to and, in fact, was actually pursuing that same policy in this case.
It may be that defendant felt secure in this case against having to pay the amount involved as it exacted that the body be produced, a condition impossible to meet. However, the company did not condition its waiver of proof of death and rights under the military and naval risk clause upon the production of the body, but simply said that the amount would be paid if the body should be produced.
[3] Counsel disagree as to the character of the certificate sued on; that is, whether it is a service insurance policy or certificate, or an industrial life insurance policy. Plaintiff's counsel contends that the certificate is governed by Act No. 136 of 1938, as amended, which defines and deals with service insurance; whereas defendant's counsel argue that the policy is governed by laws dealing with industrial life insurance, especially Act No. 148 of 1936, as amended by Act No. 340 of 1942. The lower court held with plaintiff. This phase of the controversy, as we view it, is unimportant to a correct decision. In passing, we say that Section 7(4) of Act No. 136 of 1938, as amended by Act No. 339 of 1942, expressly provides that only "term" insurance policies shall issue thereunder. We do not understand the certificate sued on to be in the form of a "term" policy or certificate.
Section 2 of Act No. 148 of 1936, defines industrial life insurance by describing the character and kinds of businesses the act comprehends, among which is to "provide for the furnishing of a funeral", etc. Defendant's charter in declaring its objects and purposes includes the conducting of the business of industrial life insurance and the furnishing of funerals. Act No. 148 of 1936 and others are named as laws under which the company was incorporated.
Section 3 of Act No. 148 of 1936, enumerating some of the things a policy should contain, in part, reads as follows: "* * * and shall provide for a stated cash payment in lieu of such funeral in the event a change of domicile of the assured has made it impractical for the company to furnish such funeral."
A provision of the same character is to be found in subsection (4) of Section 7 of Act No. 136 of 1938. But the certificate in this case carries no stipulation to meet the requirements of said provision.
[4] By availing itself of the quoted provision, a company obligated to furnish a funeral may protect itself against financial loss in unusual cases which otherwise would fall within the terms of the certificate. Such a provision would take care of the present case and cases of like character. And since the defendant failed to follow this requirement of the law, and since, obviously there is liability under the certificate, the measure thereof is the amount for which plaintiff sued; in fact, Mr. Kilpatrick's testimony makes it clear that if there is liability it is for the face amount of the certificate. Liability cannot be avoided by defendant by the imposition of an impossible condition precedent to its discharge of said liability. The body of the unfortunate service man is somewhere in the depths of the ocean that engulfed it when the carrier sank therein. If the condition imposed in this case be tenable, then payment under all such policies may be avoided in cases presenting like facts. This is unthinkable.
For the reasons herein given, it is our opinion that the judgment appealed from is correct, and is, therefore, affirmed with costs.
 On Petitions for Rehearing.